IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALLAN HARKLEROAD, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 3:25-cv-662 |
| § | |
| § | |
| DALLAS-FORT WORTH § | |
| INTERNATIONAL AIRPORT BOARD, § | |
| § | |
| Defendant. § | JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Allan Harkleroad ("Harkleroad" or "Plaintiff"), in the above-styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of Dallas-Fort Worth International Airport Board ("DFW Airport" or "Defendant"), and for cause of action, would show the Court as follows:

### I.   INTRODUCTION

1. This action seeks back pay, front pay, compensatory damages, punitive damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for disability discrimination and retaliation suffered by Harkleroad in the course of his employment with Defendant. Harkleroad complains that he was discriminated against regarding the terms and conditions of his employment because of disability, and that he was subsequently retaliated against for engaging in protected activity. Harkleroad demands a jury on all issues triable to a jury.

## II.   PARTIES

2. At all relevant times, Harkleroad was a citizen of the United States and the State of Texas and is currently a resident of Flower Mound, Texas.

3. Defendant is a quasi-governmental entity and an employer as defined by the ADA. Defendant's registered agent for service of process is Elaine Flud Rodriguez, who may be served at 2400 Aviation Drive, DFW Airport, Texas 75261, or wherever she may be found.

## III.   JURISDICTION AND VENUE

4. This action is brought under the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12101, *et seq*. ("ADA").

5. The unlawful employment practices were being committed within the jurisdiction of the United States District Court for the Northern District of Texas – Dallas Division, as the acts and conduct charged herein occurred in this District.

6. This Court has jurisdiction over all claims in this action. The amount in controversy is within the jurisdictional limits of this Court.

## IV.   PROCEDURAL REQUISITES

7. Harkleroad filed a Charge of Discrimination ("Charge") against Defendant under Charge Number 450-2024-08264 with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about June 7, 2024. In his Charge, Harkleroad asserted that Defendant discriminated against him because of his disabilities and retaliated against him because he complained about the discriminatory treatment. Specifically, Harkleroad asserted that Defendant discriminated against him on the basis of his disabilities and medical treatment, by terminating his employment, and by replacing him with an individual whom he believes is not disabled, in violation of the ADA. Harkleroad further asserted that Defendant retaliated against him by terminating his employment because he complained to his supervisor about the discriminatory treatment based on his disabilities, in violation of the ADA.

8. On December 20, 2024, the EEOC issued a Notice of Right to Sue letter, entitling Harkleroad to file an action in this Court.

9. The filing of this lawsuit has been completed within ninety (90) days of Harkleroad's receipt of the Notice of Right to Sue letter.

10. All conditions precedent to filing this cause of action have been met.

### V.    FACTS

11. Plaintiff Allan Harkleroad is 63 years old and suffers from two (2) disabilities that require Inflectra chemotherapy infusions approximately every eight (8) weeks, for which he used approved sick time. Harkleroad's treatments, however, did not interfere with his work.

12. Harkleroad's career over 37+ years has earned him numerous awards for outstanding achievement in both private and publicly held companies, and he has held Controller/Director positions since 1990.

13. Harkleroad began working at Dallas-Fort Worth International Airport Board ("Defendant") in October 2022 as Department Controller. According to what Harkleroad was told by his supervisor, the previous Department Controller, Milred Alvarez, departed without any notice at Defendant's fiscal year end following 14 years of service.

14. Harkleroad's first chemotherapy infusion was on or about December 9, 2022, for which he did not require a sick day.

15. Harkleroad's first year with Defendant was a very successful one. In December 2022, Harkleroad successfully closed Defendant's 2022 fiscal year end for Energy, Transportation, and Asset Management ("ETAM"), comprising 32 reporting groups. In April 2023, Harkleroad received a satisfactory six-month probation review, which is customary for all new employees of Defendant. In June 2023, Harkleroad was required to absorb the duties of his colleague, Christy Caunitz, when she resigned, and he managed to streamline the extra work to make the process more efficient to accommodate the additional workload. In July 2023, Harkleroad completed

3

ETAM's 2024 budget, which at that time encompassed in excess of 90% of Defendant's fiscal year 2024 operating budget of approximately $175 million, and it was approved by the Board. In August 2023, Harkleroad successfully supported Defendant's system migration to Oracle Fusion. Lastly, in December 2023, Harkleroad successfully closed ETAM's 2023 fiscal year.

16. On November 8, 2023, Harkleroad received his year-end performance review, which rated his performance as "unsatisfactory." Defendant's criticisms of Harkleroad included competency, communication, and availability. This was a surprise to Harkleroad given his many accomplishments during his tenure with Defendant. Indeed, there was never any mention of competency issues during Harkleroad's 14 months of employment prior to receiving his year-end performance review. Quite to the contrary, the feedback from Robert Rodriguez, the Department VP whom Harkleroad supported, was that Harkleroad's "professionalism and knowledge" was greatly appreciated. Regarding communications, the feedback Harkleroad received from his supervisor was that Harkleroad's communications were, in fact, excellent. Lastly, the availability issue raised in the year-end performance review was related to one (1) missed phone call on a Friday evening that, once Harkleroad realized he missed, he responded to on the next day (a Saturday). When Harkleroad followed up with the person whose call he missed, they responded that the issue had been blown way out of proportion, which Harkleroad shared with his supervisor. Despite all this, Harkleroad was presented with a Performance Improvement Plan ("PIP") and was informed he had 30 days to correct the issues or he could face termination. Attending that meeting was Harkleroad's supervisor, Michael Andersen ("Andersen"), Financial Planning Manager, as well as Harkleroad's coworker, Silvia Ng ("Ng"), who served as a witness. No one from Human Resources was present at the meeting.

17. Harkleroad asked Andersen for specifics regarding his alleged unsatisfactory performance. In response, Andersen cited Harkleroad's disabilities, noting that Harkleroad was undergoing chemotherapy during a conference call one time, and there was background noise that

4

could be heard. While this is true, at the time that event occurred, Harkleroad was on sick leave approved by Andersen for the treatment, but Harkleroad agreed to participate on the call anyway. Harkleroad explained that the reason for the background noise was that the nurse was having difficulty administering the chemotherapy infusion with Harkleroad's veins collapsing during the procedure. Although Harkleroad attempted to mute his side of the call, he was unable to do so completely. He expressed his surprise to Andersen that Andersen would use that event as an example of Harkleroad's alleged poor performance, especially in front of a coworker (Ng), potentially violating Harkleroad's HIPAA rights in the process, as Andersen was the only other employee of Defendant (other than Harkleroad) who knew about Harkleroad's disabilities to that point. In fact, Andersen raising the issue visibly upset Harkleroad, as Harkleroad had never brought up, discussed, or mentioned any issue with his treatments. When confronted with Harkleroad's surprise and reaction to what Andersen had said to Harkleroad, Andersen had no response and ignored Harkleroad's question about why Andersen would raise this.

18. None of the reasons for the PIP that Andersen provided verbally in the meeting in front of Ng—all of which Harkleroad demonstrated were erroneous—were documented in the written PIP itself. After receiving a copy of the written PIP, and noting that the verbal reasons were not included in the written PIP, Harkleroad requested a copy of the meeting notes Andersen read from when he provided his verbal reasons; however, Andersen did not grant Harkleroad's request and claimed, in fact, that there were no meeting notes even though he had them in the meeting on the table in front of Harkleroad as he was reading from them.

19. Approximately two (2) weeks later, Andersen scheduled a follow-up meeting. Only Andersen and Harkleroad were present. Andersen verbally offered to terminate the PIP process entirely, as well as provide a written letter of reference, but only if Harkleroad agreed to support a transition plan in which his duties would be transferred to someone else over time. Harkleroad did not agree to Andersen's proposal.

20. On November 28, 2023, Harkleroad met with Lisa Koester ("Koester") in Human Resources and expressed that he believed Defendant had violated the ADA when Andersen referenced an event that occurred during treatment for Harkleroad's disability as a basis for the written PIP that Defendant had issued, as well as Harkleroad's belief that his HIPAA privacy rights had been violated when Andersen referenced Harkleroad's treatment for a disability while in the presence of Ng. Koester ignored Harkleroad's complaints relating to the ADA and HIPAA violations and failed to offer any remediation or intent to investigate Harkleroad's allegations. Instead, Koester simply responded that Harkleroad needed to focus on his alleged performance issues over the next 30 days. Additionally, Harkleroad questioned Koester regarding the length of the PIP period being 30 days, as this was not the normal term of 60 to 90 days. Koester replied that it was up to the employer to define the PIP term, that it is not set. Harkleroad was left with the impression that he was being targeted.

21. Over the 30-day PIP period, Harkleroad was able to meet all requirements to close the books for November 2023 with no complaints or issues from anyone. Once 30 days had lapsed, however, Harkleroad was presented with a Charge Letter on or about December 8, 2023, once again rating his work as "unsatisfactory." Harkleroad offered a thorough rebuttal to the Charge letter on December 12, 2023, and a follow-up meeting was set for December 18, 2023. In that meeting, Harkleroad was terminated effective immediately, with no severance offered. The VP of Finance for Defendant, Abel Palacios ("Palacios"), was present at the meeting. Harkleroad asked Palacios if he had had an opportunity to review Harkleroad's response to Defendant's Charge Letter, and Palacios said he had not. Harkleroad found this very disappointing and negligent given that the rebuttal included the allegations that Harkleroad had previously reported to Human Resources that had been ignored.

22. The day after Harkleroad's termination, Yun Xu ("Yun") was introduced as his replacement. Upon information and belief, Yun was offered employment with a start date of

November 20, 2023, but negotiated a delayed start date of November 27, 2023, in order to begin work after Thanksgiving.  The timeline of the hiring of Harkleroad's replacement suggests that Defendant was not acting in good faith and had no intention of allowing Harkleroad to correct any alleged performance deficiencies during the 30-day PIP period.  Additionally, upon information and belief, Yun is not disabled.  Yun, like Harkleroad's predecessor, Alavarez, resigned her position before her 6-month probation review in April, citing excessive workload.

### VI. DISABILITY DISCRIMINATION UNDER THE ADA

23. Harkleroad incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

24. Defendant discriminated against Harkleroad in violation of the ADA.

25. Harkleroad was subjected to different terms and conditions of employment and was ultimately terminated by Defendant because of his disabilities, as that term is defined under the ADA.

26. Defendant perceived or regarded Harkleroad as being disabled, even though he could perform the essential functions of his job, with or without reasonable accommodation.

27. Defendant's termination of Harkleroad's employment and subjecting Harkleroad to different terms and conditions of employment constitute disability discrimination under the ADA, 42 U.S.C. § 12101, *et seq*.

28. As a result of Defendant's discriminatory actions, Harkleroad has suffered lost wages in the past and future, loss of future earning capacity, emotional pain and suffering, and mental anguish, all of which were caused by Defendant's treatment of Harkleroad.  In all probability, Harkleroad will continue to suffer such damages in the future.

29. Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Harkleroad.

## VII.  RETALIATION UNDER THE ADAAA

30. Harkleroad incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

31. Defendant discriminated against Harkleroad in violation of the ADA.

32. Harkleroad engaged in conduct protected under the ADA when he put Defendant on notice of his medical condition and when he complained to his supervisor and Human Resources about the discriminatory treatment based on his disabilities.

33. Harkleroad was subjected to an adverse employment action following his engagement in protected conduct. Specifically, Harkleroad was placed on a PIP and then ultimately terminated.

34. There was a causal link between the protected conduct and the adverse employment actions.

## VIII.  DAMAGES

35. As a result of Defendant's conduct, Harkleroad seeks the following relief: (1) back pay, including, but not limited to, his salary, bonuses, and benefits; (2) front pay, including, but not limited to, his salary, bonuses, and benefits; (3) costs of court and attorneys' fees; (4) mental anguish and emotional distress in the past and future; and (5) compensatory damages.

36. Additionally, because Defendant's actions were committed maliciously, willfully, or with reckless indifference to Harkleroad's federally protected rights, Harkleroad is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

## IX.  JURY DEMAND

37. Harkleroad requests a trial by jury on issues triable by a jury in this case.

## X.   PRAYER

WHEREFORE, Plaintiff Allan Harkleroad respectfully prays that upon final trial hereof, this Court grant his appropriate back pay, including, but not limited to, his salary, bonuses, and benefits; front pay, including his salary, bonuses, and benefits; mental anguish and emotional distress in the past and the future; compensatory damages; punitive damages as allowed by law; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: */s/ Daryl J. Sinkule*
DARYL J. SINKULE
State Bar No. 24037502
djs@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, Texas 75219
Telephone: (214) 969-9099
Facsimile: (214) 379-0843

**ATTORNEYS FOR PLAINTIFF
ALLAN HARKLEROAD**